

Protecting Intellectual Property

September 4, 2012

*Joint Letter Brief RE: Discovery Matter*

<u>Via U.S. Mail</u>

Phillip Burton Federal Building and United States Courthouse
Attn: Honorable Judge Laurel Beeler
Courtroom C, 15th Floor
450 Golden Gate Ave.,
San Francisco, CA 94102

38 MILLER ave.,
SUITE #263
Mill Vallley
California, 94941
P: 415.325.5900
blgibbs@wefightpiracy.com

    *Re: Case no 4:11-cv-03827*
    *Joint Letter Brief RE: Discovery Matter*

Dear Honorable Judge Beeler:

    In accordance with this Court's Standing Order on discovery disputes that remain unresolved after an in-person meet and confer (Standing Order, Section C(8), effective May 17, 2012), Plaintiff's lead counsel, Brett Gibbs, and Eric McClain's lead counsel, Steven Yuen, respectfully submit this Joint Letter Brief detailing our discovery dispute respective positions.

## PLAINTIFF'S POSITION

    On May 24, 2012, the Honorable Judge Beeler granted Plaintiff Hard Drive Production, Inc.'s ("Plaintiff") request to serve the ISP Subscriber (Mediacom) of IP address 173.16.199.123, Eric McClain ("Subscriber McClain"), with a deposition subpoena (Exhibit A). The purpose of this deposition, as previously described to the Court, was for Plaintiff to ask certain questions of Subscriber McClain that may ultimately allow Plaintiff to determine the identity of the remaining Doe Defendant infringer in this case. Plaintiff immediately served Subscriber McClain with a deposition subpoena. Subscriber McClain hired attorney Stephen Yuen who explained to Plaintiff's attorney that Subscriber McClain (1) would not be available for the deposition as scheduled and (2) was not the infringer in this case for specified reasons. After considering this discussion with Mr. Yuen, Plaintiff issued Subscriber McClain a signed Covenant Not to Sue ("Covenant") effective June 7, 2012 (Enclosed as Exhibit B).

    At this juncture, Plaintiff would still like to pursue its Court-authorized deposition of Subscriber McClain. The purpose of this deposition is, and has always been, to identify (if possible) the John Doe infringer in this case. As explained, being the IP address subscriber here, Subscriber McClain is the *only person* known to Plaintiff that may have information that could lead identifying the John Doe infringer in this case. Most recently, after sending the Covenant, Plaintiff's counsel

reached out to Subscriber McClain's counsel in an attempt to find a mutually agreeable time/date/place for that deposition to occur.

Subscriber McClain objects to Plaintiff's deposition request, and has refused to set a deposition deadline. Subscriber McClain, through his attorney, argues that the terms of the Covenant release him from any and all involvement in this case including Plaintiff's taking of his deposition. At this point, the two sides are at a stale mate.

According to American Jurisprudence, Second Edition,
> A covenant not to sue is distinguishable from a release in that it is not a preent abandonment or relinquishment of a right or claim but it merely an agreement not to sue on an existing claim or it is an election not to proceed against a particular party. In other words, a covenant not to sue is an agreement not to enforce an existing cause of action against another party to the agreement…. A covenant not to sue differs from a release in that a "release" extinguishes a cause of action as to all joint tortfeasors where a "covenant not to sue" does not extinguish the cause of action and does not release other joint torfeasors even if it does not specifically reserve rights against them. (66 Am. Jur.2d Release § 4.)

It has been "said that a covenant not to sue is nothing but a contract, and should be so construed." 12 Willston on Contracts, § 36:16, *Covenants or contracts not to sue, in general* (4th ed. 2012). In other words, a covenant not to sue, unlike a full release, still allows the conventor to pursue its claims against other individuals. According to Black's Law Dictionary, a "covenant not to sue" is a "covenant in which a party having a right of action agrees not to assert that right in litigation."

Subscriber McClain argues that, per the language of the Covenant, Plaintiff is unable to make any "demand(s)" upon him, including but not limited to, requiring him to show up for the Court-authorized deposition and/or participating in any other way in this litigation. Subscriber McClain's misinterpretation of the Covenant, however, is far too broad.

First, from a practical standpoint, Subscriber McClain's interpretation would never allow Plaintiff to, for instance, subpoena his witness testimony if this case were to go to trial. Obviously, such testimony would be crucial to Plaintiff's case. Such a broad interpretation of simple word—"demand"—would, essentially, prevent Plaintiff from bringing this case against anyone at all. Despite still having an active case against a yet to be identified individual(s), Subscriber McClain's alleged immunity from any involvement would prevent that case from proceeding. This does not fit with the general interpretation of a covenant not to sue.

Second, the existing case law regarding interpretation of covenants not to sue establishes that the phrase "making a claim or demand," as used within such a covenant, should be interpreted to include solely legal or monetary claims or demands, and thus should not be construed to prohibit a request that the covenantee comply with a court-authorized deposition. In *Colton v. New York,* the court clearly details the performance that is expected of the covenantor in a covenant not to sue, stating "a covenant not to sue…is executory. The performance it demands is continuous and prospective…The performance, of course, is the obligor's future forbearance in asserting a claim which exists or which may accrue against the obligor". *Colton v. New York Hosp.*, 98 Misc. 2d 957 (NY Sup. Ct. 1979); *see also Syverson v. Int. Bus. Mach. Corp*., 472 F.3d 1072, 1084 (9th Cir. 2007). Based on this interpretation, and those general definitions provided above, the performance that

Plaintiff agreed to in the Covenant was to refrain from asserting a claim against Subscriber McClain based upon Plaintiff's allegations in the complaint of its 3827 action. Nothing more. Deposing McClain pursuant to the prior court order clearly does not constitute the assertion of such a claim.

Third, and alternatively, Plaintiff was granted a court order to serve a deposition upon Subscriber McClain on May 24, 2012. Thus, Plaintiff had already secured the authority to depose Subscriber McClain before entering into the covenant not to sue. As detailed above, Plaintiff's request that Subscriber McClain comply with the court order should not be considered a claim or demand pursuant to prevailing case law. The fact that Plaintiff was granted the authority to depose Subscriber McClain by the court prior to entering into the covenant removes Plaintiff's request that Subscriber McClain comply with that order from any alternative definition of demand, including that which is asserted by his counsel. Plaintiff already has secured the Court's authority to depose Subscriber McClain, and here merely requests that it be allowed to follow through.

Ultimately, Plaintiff seeks to enforce the prior court order allowing Plaintiff to depose Subscriber McClain. Plaintiff expects that such a deposition will yield evidence relevant to ascertaining the identity of the infringer described in Plaintiff's complaint. Plaintiff's case against John Doe still remains active, and Plaintiff's deposition of Subscriber McClain could yield information as to other potential individuals who may have engaged in infringing Plaintiff's content (e.g. roommates, neighbors). Subscriber McClain cites no basis for his broad interpretation of the Covenant. Plaintiff thus wishes to exercise its right to depose Subscriber McClain in order to aid in naming the true infringer.

## NON-PARTY ERIC McCLAIN'S POSITION

Preliminarily, nonparty Eric McClain addresses Hard Drive's assertion that he failed to contact it. First, Mr. Gibbs admits in his declaration that Mr. McClain's phone number was no longer active. (Docket 20-1 at 3:2-4.) Second, despite receiving the correct address of "375 E, Highway 20 SPC **1**" from Mr. McClain's internet service provider through the subpoena that Hard Drive propounded upon it, Hard Drive nonetheless mailed documents to the incomplete address of "375 E, Highway 20 SPC" which were never delivered to Mr. McClain. (Docket 20-1 at 3:3-6.)

Next, in its case management statement, which resulted in the court issuing an order allowing Mr. McClain to be deposed (Docket 22 at 1:16-20), Hard Drive committed a fallacy by arguing that "Subscriber 173.16.199.124 is the only person who has knowledge as to who the Doe Defendant in this case may be…" (Docket 20 at 4:9-10; see Rosen v. Unilever United States, Inc. (2010) 2010 WL 4807100, *5, J. Ware—"The fallacy of petitio principii or begging the question, is committed when one attempts to establish a basis for a conclusion by constructing a premise that assumes that the conclusion has already been established.")

Hard Drive served Mr. McClain with a deposition subpoena that violated Rule 45(c)(1) and (3)[1]—it commanded him to appear for his deposition more than 100 miles from his residence—from

---

[1] "Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an

Upper Lake to Mill Valley is 129 miles.  (Exhibit A.)  Mr. McClain, through his present counsel, then notified Hard Drive that he was prepared to execute a declaration under penalty of perjury declaring that:  (1) he did not download the adult pornographic movie; (2) he did not tell anyone else to download the movie; and (3) he does not know who downloaded the movie or when it was downloaded.  Hard Drive did not accept this declaration.  Instead, in response, Hard Drive issued a covenant not to sue to Mr. McClain.  At no time did Mr. McClain solicit any type of covenant from Hard Drive. [2]  In the covenant, Hard Drive clearly and expressly agreed that it would "unconditionally and irrevocably … refrain from making **any** … **demand(s)** … against Eric McClain[.]"  (Exhibit B at 1:14-19.)  Mr. McClain has construed this language to include any demands for his deposition as Hard Drive is presently requesting.  The subpoena issued to him supports his interpretation.  (Exhibit A.)  Specifically, Hard Drive through its counsel commanded him to appear at a deposition, and is presently continuing to demand such of him through this meet and confer process.  (Id.)

Mr. McClain agrees with Hard Drive's position that a covenant not to sue is nothing but a contract.  (p.2, ¶ 4.)  The interpretation of a contract is governed by principles of state contract law.  (Skilstaf, Inc. v. CVS Caremark Corp. (9th Cir. 2012) 669 F.3d 1005, 1014, fn. 7.)  "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…"  (Cal. Civ. Code § 1639.)  "The words of a contract are to be understood in their **ordinary and popular sense**, rather than according to their strict legal meaning…"  (Id., at § 1644, emphasis added.)  "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly **against the party who caused the uncertainty** to exist."  (Id., at § 1654, emphasis added.)

Here, the plain meaning definition of "demand" is "an act of demanding or asking especially with authority[.]"  (Merriam-Webster Online <http://www.merriam-webster.com/dictionary/demand> [as of Sep. 7, 2012].)  The word is also defined as "a seeking or state of being sought after[.]"  (Id.)  This ordinary and popular sense definition of demand includes a "demand" for a person to appear at a deposition.  (Armstrong v. Brown (N.D. Cal. 2011) 2011 WL 775906, *1—"The subpoenas **demand** that the declarants appear for depositions and produce various documents, including those on which they relied in forming the statements and opinions they offered in their declarations.")  Mr. McClain's interpretation of the word "demand" is likewise consistent with the subpoena issued to him as it "commands" him to appear at a time, date, and place for his deposition.  (Exhibit A.)  One plain meaning definition of "command" is "to demand or receive as one's due[.]"  (Merriam-Webster Online <http://www.merriam-webster.com/dictionary/command> [as of Sep. 7, 2012].)  Finally, if the court

---

appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."  (Fed. R. Civ. P. 45(c)(1).)  "On timely motion, the issuing court must quash or modify a subpoena that:  …  requires a person who is neither a party … to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person…"  (Fed. R. Civ. P. 45(c)(3).)

[2] Upon receipt of the first covenant not to sue, Mr. McClain notified Hard Drive that, while he appreciated the gesture, the covenant was invalid as it was only executed by Hard Drive's counsel, and not by Hard Drive itself.

finds that there is any uncertainty in the definition of the word "demand," it was Hard Drive who solely created the uncertainty by preparing the covenant. As such, any interpretation is construed against it.

By continuing to demand Mr. McClain's deposition, Hard Drive continues to repeat its fallacy within this letter by continuing to meritlessly argue that Mr. McClain "is the *only person* known to Plaintiff that may have information that could lead [to] identifying the John Doe infringer in this case" despite being notified that he does not have this information.[3] Thus, given the new fact of Hard Drive's agreement not to demand anything of Mr. McClain, he respectfully requests the court to reconsider its order authorizing his deposition. (See Docket 22.)

### ATTESTATION OF IN-PERSON MEET AND CONFER

The following signatories, Mr. Brett Gibbs, lead counsel for Plaintiff, and Mr. Steven Yuen, lead counsel for Subscriber McClain, hereby affirm, under penalty of perjury, that a meet and confer was held in person between both lead counsel, and that we were unable to resolve the discovery dispute described herein.

Sincerely,

*/s/ Brett Gibbs*

Brett L. Gibbs, Esq.
Encls.

---

[3] Based upon Hard Drive's breach of the covenant by persisting in its demand, it is apparent that it never intended to abide by the covenant and has made a false promise it never intended to keep. Thus, Mr. McClain now has causes of action for promissory estoppel, and for fraud, including punitive damages, in California State Court against Hard Drive.